FILED
2005 Jan-31  PM 12:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
                      MIDDLE DIVISION

JERRY SUMMERLIN,                }
                                }
     Plaintiff,                 }
                                }     CIVIL ACTION NO.
v.                              }     03-AR-2786-M
                                }
M & H VALVE COMPANY,            }
                                }
     Defendant.                 }
```

**MEMORANDUM OPINION**

Before the court is the motion of defendant, M&H Valve Company ("M&H"), for summary judgment pursuant to Rule 56(c), F.R.Civ.P. Plaintiff, Jerry Summerlin ("Summerlin"), brought this action against his employer, M&H, alleging that he was unlawfully discriminated against because of his race, black, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* and 42 U.S.C. § 1981. The complaint was filed October 10, 2003, broadly and generally alleging that M&H had systematically treated plaintiff and other black employees differently than it treated white employees. The complaint contains only two counts. One alleges race discrimination and retaliation in violation of Title VII. The other alleges discriminatory practices that have deprived Summerlin of the right to make and enforce contracts enjoyed by similarly situated white persons, the *sine qua non* of a § 1981 claim. M&H filed its motion for summary judgment on September 20, 2004.

Apparently, during the course of discovery, Summerlin's claims evolved to become more narrow and concrete. M&H, in its reply brief, insists that Summerlin is only "asserting two distinct claims." Despite the breadth of his complaint, Summerlin's brief tacitly agrees with M&H's said assessment. According to M&H, the only two discrete claims are: (1) M&H promoted a white employee, Chuck Yeager ("Yeager"), to a machine shop supervisor position in October 2000 instead of Summerlin; and (2) M&H retaliated against Summerlin for filing an EEOC charge.

Based on this narrowed universe of possible claims, M&H argues that it is entitled to judgment as a matter of law as to all claims. First, as to plaintiff's failure to promote claim(s), M&H argues that only the promotion of Yeager is the subject of a timely filed claim, and that Summerlin has not offered any proof that he was equally or more qualified than Yeager. As for retaliation, M&H argues that Summerlin cannot make out a *prima facie* case because he cannot show that M&H took an adverse action against him, or that the action it took was causally related to his protected expression. For the reasons that follow, the court will grant defendant's motion.

### *Summary Judgment Facts*

M&H manufactures and sells valves and hydrants for commercial use. Summerlin has been a supervisor at M&H since

2

June 2002.  Prior to June 2002, ever since beginning his employment with M&H in January 1996, Summerlin held various positions within the collective bargaining unit including RSGV assembler, tow motor operator, CNC (computerized numeric control) trainee and CNC machine operator.  In September 1998, Summerlin approached the M&H machine shop manager, Mike Fulmer ("Fulmer"), who is white, and inquired about being promoted to a supervisor position.  At that time, according to Summerlin's testimony, Fulmer told him that M&H was only hiring supervisors from outside the company.  In his deposition, however, Fulmer stated that all but one of the approximately ten machine shop supervisors hired during his tenure as shop manager were promoted from within.

  Until 2003, vacant supervisor positions were not posted at M&H, and M&H has no written criteria for selecting supervisors. Fulmer, personnel manager Baldwin, and vice president Green, all of whom are white, were involved in selecting supervisors during the relevant time period for this case.  In making individual decisions for supervisor positions, these decision-makers considered, among other things, the education level, past and current relevant work experience, and union experience of each candidate.  M&H managers have testified that, prior to the middle of 2002 when Summerlin was promoted to supervisor over assembly in the machine shop, he was not considered for any supervisor

positions within the company.

Summerlin points to Yeager as a white comparator employee for purposes of establishing his discriminatory failure to promote claim.  Yeager was hired as a CNC operator and performed that job for eight months prior to being promoted to supervisor on October 29, 2000.  Yeager became aware that a machining supervisor position had become available in the machine shop and submitted his resume to Fulmer.  Prior to his employment with M&H, Yeager had four years of experience supervising CNC operators, several more years as a CNC operator himself, six months of experience as a supervisor with UPS, and four years of experience as a set-up man in a machine shop.  Based on his extensive experience, particularly his supervisory experience over CNC operators, M&H offered him the vacant position.

At the time M&H made Yeager a supervisor, Summerlin had worked for four years at M&H as an RSGV assembler, tow motor operator and CNC operator.  Prior to joining M&H, Summerlin had worked as a manual lathe operator and welder for a couple of years and as a utility crew leader for approximately two years with a construction company.  Also, Summerlin had been employed for a year and a half as a supervisor at a Maryland assisted living facility.  On December 15, 1999, Summerlin was awarded the position of CNC operator in training.  Summerlin enrolled in a CNC operator training course at Bevill Manufacturing Technology

Center, and was awarded a certificate of completion on September 5, 2000, less than two months before Yeager's promotion.

As for education, Summerlin and Yeager both completed high school and studied electronics after that.  Yeager took some classes at DeVry Institute, but did not obtain a degree.  Summerlin studied electronics after high school at the National Education Center and completed his studies.  Summerlin served as union steward at M&H from 1997 through 1998 and as union chairman from 1998 through June 2002.  Yeager had no union experience at M&H at the time he was selected for a supervisor position in October 2000, but he had substantial prior union experience, including serving as union steward for three years while employed at Champion Pneumatics.

The decision-makers regarding Yeager's promotion testified that they did not consider Summerlin for the position awarded to Yeager.  Fulmer testified that he did not consider Summerlin for the position because he was in CNC training at the time.  In fact, Summerlin had completed his CNC training one month prior to the time when Yeager was promoted.  Fulmer testifed that Summerlin was conscientious about his work and did not recall Summerlin ever being disciplined for failure to meet production requirements.  He also indicated that he had no problems with Summerlin's work or knowledge of his job.

Summerlin filed two EEOC charges against M&H.  His first

charge was received by the EEOC on December 28, 2002, although Summerlin's signature on the document is dated December 22.  The charge claims that Summerlin had been discriminated against on the basis of his race and that he and other black employees had been denied the advancement opportunities afforded to M&H's white employees.  The denial of promotional opportunities Summerlin complains about stretches from September 1998, when he first approached Fulmer about being promoted to supervisor, until the decision to promote Yeager in October 2000, two months prior to the filing of this charge of discrimination.

Aside from the decision to promote Yeager in October 2000, Summerlin complains that three other promotional decisions by M&H were infected with racial animus.  First, in March 31, 1999, Jeff Brown was promoted to supervisor in the machine shop.  Second, Tim Davis was promoted to supervisor on April 6, 2000.  Third, Steve Munroe was given the leadman designation on May 8, 2000. M&H argues that these employment decisions are not before the court because they occurred outside the Title VII 180 day window for filing an EEOC charge of discrimination as a prerequisite to suit and are outside the § 1981 statute of limitations.

On or before December 18, 2000, several days before Summerlin signed his first EEOC charge, Yeager called the personnel department to request a disciplinary write-up of Summerlin for failure to follow instructions.  The personnel

6

department prepared a written record of disciplinary action on December 18, 2000, which was issued by Yeager on January 4, 2001. According to Yeager, Summerlin was instructed to work on a machine other than his normal machine because there was insufficient work to be done on his normal machine.  Summerlin reported to Yeager that he would not work on the other machine as instructed because the work was unsafe.  Yeager subsequently requested that Summerlin be written up for failure to follow instructions.

Summerlin maintains, based on M&H time records, that he took an emergency vacation day on December 18, 2000, such that the stated reason for the write-up was necessarily a fabrication. M&H admits that it is unclear when the event that precipitated Yeager's request for discipline took place, instead pointing out that the written record of discipline was prepared that day.  It is undisputed that Yeager requested the write-up that was prepared on December 18, 2002, of his own initiative, not at Fulmer's direction.  It is further undisputed that Yeager did not know about Summerlin's EEOC charge at the time he requested the discipline.  Finally, it is undisputed that Yeager issued the write-up on January 4, 2001, one day after the EEOC mailed a copy of Summerlin's first EEOC charge to M&H.[1]  The write-up was a

---

[1] Summerlin testified that Yeager requested and issued the discipline "in retaliation for [Summerlin] making a racial discrimination charge."  Summerlin Depo. p. 230.  However, when asked how he knew that Yeager was aware of his charge at that time, Summerlin testified that he knew it because, in February

first-step discipline.  Summerlin would have had to commit the same violation two additional times to be subject to suspension, and the write-up was later voided.  As a result of this series of events, Summerlin signed another EEOC charge on May 31, 2001, alleging that he was retaliated against for his prior EEOC activity.

### *Analysis*

M&H contends that it is entitled to summary judgment because Summerlin has not presented substantial evidence to establish either his failure to promote claims or his retaliation claim. The court agrees.  First, as to Summerlin's only timely filed failure to promote claim, there is no proof that Summerlin was equally or more qualified for the machine supervisor position awarded to Yeager.  Second, as to his retaliation claim, Summerlin has failed to create a genuine issue that the discipline he received was causally related to his protected expression.

*Failure to Promote Claims*

<u>Timeliness Under Title VII and § 1981</u>

Regarding the allegedly discriminatory promotion decisions made by M&H prior to July 2000, Summerlin's claims are barred as untimely under Title VII.  *See* 42 U.S.C. § 2000e-5(e)(1)("[a]

---

2001, more than two months after disciplining Summerlin, Yeager said that a write-up of another employee was related to EEOC activity by Summerlin and that employee.  *Id.* at 230-32.

charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred"). M&H promoted Yeager in October of 2000, within one hundred and eighty (180) days of his initial EEOC charge in December 2000. All the other allegedly discriminatory decisions Summerlin points to occurred more than one hundred eighty days prior to the date he filed this initial charge of race discrimination. Thus, only the decision to promote Yeager is before the court as a Title VII failure to promote claim.

None of the allegedly discriminatory failures to promote are timely under § 1981. Section 1981 forbids race discrimination in the making and enforcing of private contracts, but does not contain an express statute of limitations. In 1987, the Supreme Court directed federal courts to determine the statute of limitations for § 1981 claims by applying the most appropriate or analogous state statute of limitations, which in Alabama is two years. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661 (1987). Then, in 1990, Congress enacted a general four year statute of limitations applicable to federal statutes **enacted after December 1, 1990**, except as otherwise provided by law. 28 U.S.C. § 1658.

In 1991, Congress enacted Section 101(2)(b) of the Civil Rights Act of 1991, which altered § 1981 by redefining the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of

all benefits, privileges, terms and conditions of the contractual relationship." Before 1991, discrimination in the terms and conditions of employment, in contrast to the making and enforcement of contracts, was not actionable under § 1981. *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989).

To determine whether Summerlin's § 1981 failure to promote claims are governed by a two or four year limitation period, the critical inquiry is whether the claims were cognizable under § 1981 before it was amended in 1991. In *Jones v. R.R. Donnelley & Sons Co.*, 124 S.Ct. 1836 (May 3, 2004), the Supreme Court held that the statutory "catch-all" four year limitation period was applicable to new causes of action not cognizable under § 1981 prior to the enactment of § 1658. *Id.* at 1844. Consequently, if Summerlin's claims were made possible for the first time by the 1991 amendments to § 1981, a four year statute would apply and his claims would be timely. If, on the other hand, his claims were cognizable prior to the effective date of the four year catch-all limitation period, his claims remain subject to the two year statute of limitations under *Goodman*.

Summerlin's claims are cognizable under § 1981 as it existed prior to the 1991 amendments. He claims that he was denied four separate promotions to supervisor/management positions because of his race. Because these promotions rise "to the level of an opportunity for a new and distinct relation between employer and

10

employee," his failure to promote claims are not dependent on the 1991 expansion of § 1981.  *Patterson*, 491 U.S. 185  Thus, the two year statute of limitations applies.  Summerlin commenced his lawsuit on October 10, 2003, while all of the decisions that he alleges were discriminatory occurred on or before the end of October 2000.  Thus, all of Summerlin's failure to promote claims under § 1981 are time barred.

    Summerlin argues that his suit properly encompasses failures to promote other than M&H's decision to promote Yeager by suggesting that the series of failures to consider Summerlin for promotions gives rise to a hostile environment claim, so that the court should consider the series of promotion decisions as one "single unlawful employment practice."  Pl. Brief at 14-15; *see Shields v. Ft. James Corp.*, 305 F.3d 1280, 1281-82 (11th Cir. 2002).  This argument, however, falls short of demonstrating that the discrete promotional decisions Summerlin complains about are really a hostile environment claim, conspicuous by its absence from the complaint, and it ignores the reasoning of the very precedent on which it relies.  In discussing the Supreme Court's holding in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the Eleventh Circuit recognized that:

> [D]iscrete discriminatory acts [such as termination, **failure to promote**, denial of transfer, or refusal to hire] are not actionable if time barred, **even when they are related to acts alleged in timely filed charges**.

*Shields*, 305 F.3d at 1281, *quoting Morgan*, 536 U.S. at 113. The court is not saying that the time-barred promotion decisions are absolutely irrelevant to this case; rather, it is saying that plaintiff cannot make out timely claims under Title VII based on these other decisions.

<u>The Yeager Promotion Under Title VII</u>

Having resolved the timeliness issues, all that remains is to determine whether Summerlin has presented substantial evidence to support his claim that M&H promoted Yeager instead of him in October 2000 on account of his race.  He has not.  To establish a *prima facie* case of race discrimination in a failure to promote context, Summerlin must show that: (1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) an equally or less qualified employee who was not a member of the protected class was promoted.  *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000); *Lee v. GTE Florida, Inc.,* 226 F.3d 1249 (11th Cir. 2000).

It is the fourth element of the *prima facie* case that presents the obstacle for Summerlin that he has not overcome, even viewing the facts in the light most favorable to him.  There is no dispute that Yeager had substantial experience (approximately ten years) with CNC machines at three different employers prior to being hired by M&H.  Further, Yeager had spent

around four of those years as a supervisor or lead man over CNC machines.

Summerlin, on the other hand, had only received his certificate of completion of CNC training one month prior to the promotion decision at issue.  He had never been a supervisor in a manufacturing environment.  There is no evidence that Summerlin knew how to set up, as opposed to merely operate, the CNC machines.  Yeager, by contrast, had knowledge both of how to set up as well as how to operate many of the CNC machines in the M&H Machine Shop.  It is further undisputed that knowledge of the type of work that Yeager was to supervise was important in the decision to promote him.  Despite Summerlin's insistence to the contrary, relevant past experience is not the sort of subjective criteria that employers cannot rely on "to defeat the plaintiff's *prima facie* case by showing that the plaintiff is less qualified than the applicant chosen for the promotion."  *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998).  Inasmuch as Summerlin did not know how to set up the M&H CNC machines and was relatively inexperienced in their operation, Summerlin's necessary *prima facie* showing that he was equally as qualified as Yeager for the promotion to supervisor over machining at M&H fails.

Summerlin, perhaps realizing the traditional method of making out a *prima facie* case based on circumstantial evidence of

13

discrimination would be difficult for him with Yeager as a comparator, insists that qualifications had nothing to do with M&H's selection of supervisors and that the promotion of Yeager was part of a "pattern" of discrimination against blacks at M&H with regard to supervisor hiring and promotion.  If this charge has a grain of truth in it, the fact remains that Summerlin has not produced evidence to support it.  On a motion for summary judgment in a case like this one, a plaintiff cannot avoid an early ending unless he presents evidence that goes beyond rank speculation or by pointing out that an allegedly disproportionate number of white individuals received promotions at his place of employment.

    Summerlin makes much of the facts that M&H did not post or announce promotional opportunities and that Summerlin was not considered for the Yeager promotion.  He cites Eleventh Circuit precedent for the proposition that M&H had a duty to consider Summerlin for the promotion and its failure to do so constitutes evidence of unlawful discrimination.  The problem with this argument is that it ignores the nature of his *prima facie* burden to adduce evidence that, at least, creates a genuine issue for trial that he was equally or more qualified for the promotion than Yeager.  The cases cited by Summerlin have to do with establishing issues for trial regarding pretext, <u>not</u> establishing a *prima facie* case in the first instance.  In light of the

undisputed facts in this case, there is no issue for trial that Summerlin was equally or better qualified for the promotion to machine shop supervisor that was awarded to Yeager in October 2000.  His failure to promote claim must fail accordingly.

*Retaliation*

Summerlin has failed to substantiate his retaliation claim with evidence that the disciplinary write-up issued to him was causally related to his filing an EEOC charge.  To establish a *prima facie* retaliation claim under Title VII, Summerlin must show that: (1) he participated in protected activity under Title VII; (2) he suffered an adverse employment action; and (3) there is a causal connection between his protected activity and the adverse employment action.[2]  *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).  There is a conspicuous absence of evidence of a causal connection between the discipline Yeager requested on December 18, 2000, which was later issued on January 4, 2001, and Summerlin's filing an EEOC charge on December 28, 2000, which was mailed to M&H on January 3, 2001.  Yeager was responsible for issuing the discipline to Summerlin, and his uncontradicted testimony is that he did not know about Summerlin's charge when he issued the discipline, much less when he requested it four days before Summerlin even signed his

---

[2] It is not clear from plaintiff's complaint whether he intends to allege retaliation under § 1981.  To the extent he does, the same requirements of proof and analytical framework that apply under Title VII apply to this claim.

15

charge.  For this reason, Summerlin's retaliation claim fails as a matter of law.

### *Conclusion*

In accordance with the foregoing analysis, defendant's motion for summary judgment is due to be GRANTED.  A separate and appropriate order will be entered.

DONE this 31st day of January, 2005.

_____
WILLIAM M. ACKER, JR.

UNITED STATES DISTRICT JUDGE